Next case call for oral argument is People v. Agin. People v. Agin. I'm Darren Kimmel, and on behalf of the Office of the State Appellate Defender, I represent Shannon Nagle. This case is about the continuing duty of defense counsel and the trial court to inquire into the defendant's fitness as new information arises. The defense counsel moved for continuance the morning of trial in this case. At the hearing, Shannon stated that his mental health medication had just been increased, and counsel explained that he believed Shannon had a loss of memory of the events at issue in this case, that counsel believed implicated Shannon's ability to participate in his defense. Then at trial, we learned that the offense itself did not make any sense. Shannon's actions were simply bizarre in this case. Punching an acquaintance in the face while the two were driving down a highway for no apparent reason, after the acquaintance had taken him to a doctor's visit. And then Shannon bashes his head on the concrete after being tased by the police, and says that, consistently states that he has no memory of the events at issue. Then finally, the PSI comes out at sentencing, and sure enough, he has a long history of mental illness. It corroborates the statements he made in the pretrial hearing the morning of trial about being on certain medications, and it states that he has a traumatic brain injury. What about defense counsel's response to the court's questions about the ability of his client? And he was pretty specific. He said there's a memory lapse, but he understands the nature of the proceedings against him. He's able to assist in his defense. It was not just he's okay, but it was a rather detailed response to the court. How do you handle that? So I parse it a little more than the way Your Honor. I'm sorry? I would parse the statement that counsel made a little more than Your Honor's paraphrasing there, because I think the key bit is he said that he has a memory issue, and that might implicate, quote, whether or not he would be able to adequately be able to assist in his defense. So the things that counsel conceded were that he could talk to me, essentially. That's the part of his own defense. He can speak to me. We don't have a communication issue. But he said specifically he has a memory loss. I believe he has a memory loss. I'm not sure the cause of the memory loss, whether it's due to the drugs or due to physical injury, as came out at trial, but he said it might implicate his ability to participate in his own defense. And his defense counsel was equivocal. But he said the word might, Your Honor. Huh? He said the word might, Your Honor. Right. I mean, he didn't really say that he'd had a lot of trouble. He didn't alert the court. He didn't warn the court that there was an issue. I mean, I kind of found it strange. Why did he wait until the last day of trial? I mean, until the day of trial. I don't know the answer to that, Your Honor, and that's one of the reasons I've raised this equally as ineffective assistance of counsel, as much as it is promptu plenaire for the court not to sua sponte move for fitness. Well, why do you think the court sua sponte should do it? The Unlawful Penal Court said so in People v. Samedham, that if there's evidence that provides a bona fide doubt of fitness. I know. There has to be evidence of a bona fide doubt. But what was there here that should have done that? So I think the bizarre behavior in the underlying offense, coupled with a long history of mental illness, should have. . . But the court wouldn't have known that at the time. At the time of the hearing. But this is a continuing duty. So you think that the court should interrupt all the proceedings and sua sponte do it? That's what the Illinois Supreme Court has said needs to happen. And if not, the court may. . . Let me follow up on that sua sponte. The court inquired. This was not initiated by defense counsel. The court did inquire. So as far as a sua sponte duty on the court, aren't we basically examining this scenario after the court made inquiry and defense counsel responded, and we're evaluating that because the court did initiate action? So I frame this as being that that is correct. We are looking at the pretrial hearing, but we're also looking at the entirety of the trial process. So the morning of trial hearing, during the trial as more evidence arises, and during sentencing. Even if we had gotten the conviction and gotten the sentencing, and any of the three actors, because remember it's the prosecutor, the judge, and the defense counsel all have an equal duty under the law to maintain the defendant's due process rights in terms of fitness. So if at any point during the process information arises that implicates the fitness issue, all three of those people have a duty to say, hey, should we look into fitness? So I agree that at that initial hearing there was an inquiry by the trial court. Defense counsel moved to continue. There was never a motion for a fitness inquiry. But the court treated it as if it was a fitness question and asked about whether there's a bona fide doubt of fitness. But the ruling the court made at that pretrial hearing, the morning of trial, was essentially that the judge didn't believe Shannon, didn't believe the testimony by Mr. Hagan that was presented, and there was no other evidence presented.  Absolutely, Your Honor. And as I recall, the court had a long history of information related to Shannon and actually spoke on the record about a number of his interactions and how he was sorry for his troubles, but he just couldn't get his act together or whatever. And I thought it was pretty apparent that the court considered his past and also questioned his credibility. I think that's absolutely correct, Your Honor. Okay, so but doesn't that show... The only quibble I have would be with the discussion that Your Honor is talking about, the history, the state has talked about that in its brief. That comes from sentencing, so that's decoupled. The court was familiar with Mr. Hagan, and that conversation happened with sentencing. Does that matter? No, I just wanted to point out the history entirely. My point is that you have to find a bona fide reason, and the court in its discretion seemed to have seriously considered factors and rejected them. I agree with that to a point, and here's the problem. The way counsel presented the motion to continue was about prescription medication. He mentioned to the court during the colloquy about whether it was a bona fide doubt, as Your Honor asked initially, that he believed there was a memory loss. He wasn't sure of the cause, and he thought it might implicate Shannon's ability to participate in his own defense. But what the court said it didn't believe primarily was the issue about the medication. The court said, I don't know what drugs he's on. There was some confusion about which drug it was. I don't know what those drugs do. Counsel didn't present anything, any medical records or any explanation of the drugs. So it may be that the court was also saying, I don't believe you, that you have a memory loss. That's not quite clear. But here's the problem. People v. Stahl, the Illinois Supreme Court case from 2014, is explicit that a loss of memory of the events at issue is one of the factors for an ultimate determination of fitness. But I think the court pointed out that he remembered some things very clearly and then said that he didn't remember others, and it seemed like he was pointing out that he had selective memory. I think that also, I think, went to the credibility issue. It may be, Your Honor, but I think when we talk about memory, I think we're all familiar with football players today, traumatic brain injuries. We know a little bit more about memory and the brain than we used to even relatively recently. The type of injury that Shannon is talking about in this case, he hits his head and he loses the memories of that day. He's never alleged that he has an inability to form new memories on an ongoing basis. He bashed his head and then doesn't remember. It sounds like he had a significant injury. However, I don't think there was any showing at all of a significant brain injury. You know, he talked about seeing doctors, and it turned out it was a nurse practitioner for his knee versus mental health issues, and it didn't seem like there was any collaboration of this testimony. I think there's the clinical social worker's statement that she seemed to think he had a traumatic brain injury. But that aside... That was kind of a cursory, you know, let's look into it or something. It was hardly a diagnosis, and I don't think a social worker can diagnose traumatic brain injury. And putting that to one side, I think the point, though, is you can hit your head and lose your memory for that day. You can. No question about it. So I guess what I was trying to set up here is the court has presented the motion here in the morning trial with an allegation of prescription medication being increased. I would note that the prescription med with no corroboration for that was Shannon's statement. If Your Honor wouldn't mind, I'll just finish this up quickly. In that sentencing, the PSI corroborates that, that he was on that drug. But I think more importantly, we have the evidence at trial that has a plausible mechanism for him hitting his head that could also support the memory loss. And those two things were not present at the pretrial hearing, and that's why this continuing duty comes into play. Thank you. Thank you, counsel. Counsel? May it please the Court? Counsel? Jennifer Hamlin on behalf of the people. So this case is not like some other cases in which a defendant argues on appeal that the trial court failed to recognize the existence of a bona fide doubt of fitness. For instance, in the Sandman case cited by the defendant, the court ignored multiple red flags, including bizarre statements by the defendant made in open court, and the reviewing court remanded so that the trial court could consider for the first time the issue of the defendant's fitness. In this case, as Your Honor has pointed out here today, this case is different because the court did initiate an inquiry into the question of defendant's fitness and ultimately did make a specific finding and memorialized that on the record, a finding that no bona fide doubt of fitness existed. So the defendant on appeal is asking this court to review that ruling, which is, of course, on a high abuse of discretion standard, not merely to consider an issue that the lower court ignored. And the record in this case shows that the trial court's pretrial ruling that no bona fide doubt of fitness existed was not an abuse of discretion, and that additional facts at trial and sentencing as they emerged only supported that finding. Now — Ms. Kami, just so we're clear on the record, you're talking about the October 29, 2014 hearing. Yes, Your Honor. That's correct. At that hearing, the defendant was asked a question by his counsel specifically, do you think you're in a position today to assist me in presenting your defense to the jury? And the answer was no. That was the last question asked. But then the judge got involved in the questioning, right? Well, there was some cross-examination. Okay, let's put it that way. And they asked him about this increased dosage. And the question was, why do you think you can't assist Mr. Rowland with your defense in this case? And the answer was, I'm confused. I'm confused in my mind, disoriented, unstable, you know? And then they go on. This is the question. Well, you're disoriented. Where are you now? The answer is spaced out kind of. I mean, it seems to me that there were some problems with this guy. He was mentally ill. On the other hand, the judge knows this person. Clearly knows him. There's 400 pages of PSI report. So are we to go with the standard? What is the standard that we're to use in judging the judge on the issues here? Well, one thing about the record, when the state asked, where are you? And the defendant answered spaced out kind of. The state then followed up and asked, I mean, where are you physically right now? Right. The state was trying to show that he was oriented as to time, place, et cetera. Sure. The question as to what is the standard, the court's failure, as the defendant is phrasing it, the defendant is arguing that the trial court failed to order a fitness hearing, not merely that the court failed to find a bona fide doubt of fitness, but that the court should have ordered a fitness hearing. And that's reviewed on an abuse of discretion standard. But if the court has a bona fide doubt, just assume for a moment that they do, it does. What is the next step for the court? The next step for the court is to have a fitness hearing. Right. To order one. Yeah. Right. Okay. In response to your question, actually, Justice Katz, you asked why did the defense counsel or the defendant wait until the day of trial to bring these facts out. The defense counsel actually made a record on that. He told the court that this matter had just been brought to his attention that morning. And I want to mention that in the context of noting that there had already been one continuance of this trial and that in August 2014, two months prior to the October 2014 hearing and trial in this case, the defendant was 90 minutes late to his final pretrial for the August trial setting. And then once the hearing got underway, defense counsel said and told the court that the defense was ready to proceed with trial. So the defendant at that point answered ready for trial. And at no point prior to that did the defense say that he was having any problems with communication or understanding the defendant or working with the defendant in the creation of a defense in that case. But also the defense counsel made those representations to the court here. In the context of this request for a continuance on the morning of trial, the defendant had completely failed to appear for the final pretrial hearing in October. And I mentioned that in the context of noting that his medical records that came out at the pre-sentence investigation reflected that during the course of 2014, he repeatedly told his medical provider that he had persistent anxiety about his impending trial. So he testified at this pretrial hearing that his medication had been increased and that this caused him mental confusion and affected his ability to recall the charged events. And then when the trial court asked defense counsel whether, as an officer of the court, if he, counsel, had a bona fide doubt of the defendant's fitness, defense counsel told the court that the defendant definitely understood the nature and purpose of his proceedings and that the only issue was whether he could adequately assist in his defense in that he had not been able to provide specific details regarding events. Again, this is coming up for the first time here, after the defense counsel two months prior had answered ready for trial. But isn't that one of the factors which you just indicated, whether his client can assist in his own defense? The defense counsel went on to say that he didn't know whether the memory issue was caused by, as the defendant points out, the injury sustained at the time of the incident or the change in medication or... Does it matter? Well, it matters in this context, Your Honor, because the defense counsel also said that he didn't know whether the memory issues could have alternatively been caused by the passage of time. And I note that that's not the kind of physical or mental condition which can cause a fitness problem. The defense counsel, in this case, declined to argue the existence of a bona fide doubt, didn't present any argument regarding the effect of the defendant's medication, saying only that the court could assess the defendant's testimony, and didn't tell the court that he was having difficulty assisting in his defense. I know that that's what the defendant testified, and that was Your Honor's question, that the defendant testified that he believed that he was having difficulty assisting in his defense. But defense counsel told the court that at any rate, regardless of what caused the memory issue, he and the defendant, quote, have been able to communicate and discuss the case in detail. So we have a case where the defendant... But that was before that morning. That was in the past tense. They had been able to discuss it. Well, Your Honor, I'm not sure about that. I mean, I don't necessarily read the record that way. It says we have been able to communicate and discuss the case in detail. I don't see that as... But his quote was, and I'm sorry I interrupted. No, please. But his quote was, he was concerned as to whether he would be adequately able to assist in his defense. So my question is, even if the defense counsel had in the past, and now we have a medication change, doesn't a defendant have the right to, as the trial proceeds, be able to assist in his own defense, even if he's already talked with his defense counsel and they all have a strategy and everything else? Well, Your Honor, in this case... Well, in this case, Your Honor, the defense attorney told the court that the defendant understood the nature and purpose of the proceedings and that he'd been able to communicate and discuss the case in detail. This is a case where he answered ready for trial two months prior, and he told the court, maybe with a wink, that he'd just learned about this on the morning of trial. And the trial court made a credibility determination, said that he didn't find the defendant's testimony, quote, particularly, he wasn't, quote, particularly persuaded by that testimony. And he memorialized, the court memorialized, that these credibility and factual findings were based on its observations of the defendant and its considerations of the defendant's interest and bias in testifying. So when the defendant argues that a bona fide doubt exists because the defendant said that he had no memory of these charged events and that the dosage change of medication left him confused, my answer is that the court didn't believe that testimony. And in reviewing the trial court's exercise of discretion, as Your Honor pointed out that the court had in that context, this court should bear in mind that the trial court was in a superior position, of course, to see the defendant's behavior in court and to determine the existence of a bona fide doubt. I'd also note that the Illinois Supreme Court, in a case called Easley, identified three factors relevant to the analysis of whether a bona fide doubt exists. And none of them have anything to do with a memory of the charged events. They concern whether there was a medical opinion on fitness, whether the defendant was behaving irrationally, he wasn't, and whether the defendant exhibited a demeanor indicating unfitness. And here he didn't. Now, the fourth factor is the representations of defense counsel. And I think that in this case, the defense counsel was sending a message that defense counsel did not believe a bona fide doubt of fitness existed. So for those reasons, the court did not abuse its discretion in finding no bona fide doubt of fitness in this court to affirm. Thank you, Your Honor. Counsel? May it please the Court? I would just note that the case of frozen counsel is just discussing Easley. It predates Stahl, the case we've been relying on here, by 14 years. That's the case that sets up the – I'm sorry. Could you speak a little louder? I missed what you said. I apologize. People versus Easley, the case counsel was just discussing, which is an excellent case and provides the prejudiced prong for ineffective assistance of counsel that we're relying on here, that we only need to show a bona fide doubt rather than the ultimate showing of fitness. Easley is a great case. Counsel, just know that it doesn't talk about memory. That's fine. People versus Stahl, which was decided in 2014, 14 years after Easley, does talk about memory, and it says that it's one of the factors in the totality of the circumstances. It's a factor that's specifically written into the fitness statute, if I might add. Are you basically saying – and I've tried some of these cases. Are you basically saying that if any of these factors are raised, the court is compelled to seek a fitness hearing, either in a temporally ambiguous representation with defense counsel or during the course of the trial on the merits, one could look at this and argue that the actions of the defendant just don't make any sense? Are you saying that the court is compelled to do so, or does the court retain some discretion to look at all of these factors together? They're the closest observer and exercise its discretion as to whether this is legitimate, this is just a sham, or whether there's just nothing there to have the basis, to supply the basis of a bona fide question. The court does have some discretion, I think is the short answer. But the discretion comes in as to whether there's a bona fide doubt or not. Right. If there is a bona fide doubt, there's no further discretion. And the court has the discretion to determine that there is no bona fide doubt. That is correct, Your Honor. Bona fide doubt of fitness is one of those terms like reasonable doubt of guilt that is essentially self-defining. And contrary to a reasonable doubt, guilty beyond a reasonable doubt, a bona fide doubt of fitness is a low standard. Oh, sure. It's a doubt of fitness. So how can a lack of memory of the defense at issue be a factor in the ultimate determination of fitness? Well, can't it be a credibility issue as well? I mean, I think the judge made some findings or statement on the record that I think he'd been dealing with this gentleman as long as he'd been a judge. And I can't remember how many years that was, but it looked like he'd had quite a history with him and, you know, kind of talked about how he wanted to help him and it just never seemed to get – I mean, it's obvious he had some longstanding history with his credibility issues. Absolutely, Your Honor. I don't think that's a doubt. So the memory could also, in his own determination, be a sham to avoid the trial, quite frankly. It absolutely could. And I think with any fitness issues, there's always going to be a problem when we're talking about fitness of people potentially trying to game the system. That's an issue. But we also have to design a system to take care of people who actually have fitness issues. And they might not be the most believable or likable people. So the question that I've been wrestling with with this case is what do we do about someone who actually has no memory of the events at issue but he behaves in a way that's somewhat bizarre and has been doing that for years because he has serious mental health issues and so he's developed a track record for not being particularly believable. But there's a mechanism, a plausible mechanism in the facts of the case to show how he could have acquired his lack of memory. What do we do with that person? And I think when we look at the cases, it's clear that we should give them at least an initial fitness evaluation, which may well say that this person is malingering and is just fine and doesn't have any memory loss. But that's the baseline is we give them. . . What I review here is plain error, isn't it? For the trial court's error, that's correct. For the trial court, we have to look at it as plain error. And then the second thing that we shouldn't lose sight of is your ineffective assistance of counsel claim. So we have two different things going on here that you're claiming. I would compare them in the sense that if this court finds that there was a bona fide doubt of fitness at any point in the proceedings below, we're going along in time and suddenly new information arises that provides a bona fide doubt of fitness. Under either standard, ineffective assistance of counsel, either easily, or plain error under People v. Holt and People v. Sainame, once the bona fide doubt arises, this is reversible error either way. Thank you. Thank you, counsel. We appreciate the briefs and arguments. Counsel, we'll take a very short break and then conclude the last two arguments. All rise.